**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL F. DORMAN, individually as a participant in the SCHWAB PLAN RETIREMENT SAVINGS AND INVESTMENT PLAN and on behalf of a class of all those similarly situated, *Plaintiff-Appellee,* <br><br> v. <br><br> THE CHARLES SCHWAB CORPORATION; CHARLES SCHWAB & CO., INC.; SCHWAB RETIREMENT PLAN SERVICES, INC.; CHARLES SCHWAB BANK; CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.; WALTER W. BETTINGER III; CHARLES R. SCHWAB; JOSEPH R. MARTINETTO; MARTHA TUMA; JAY ALLEN; DAVE CALLAHAN; JOHN C. CLARK, *Defendants-Appellants.* | No. 18-15281 <br><br> D.C. No. 4:17-cv-00285-CW <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted June 14, 2019
San Francisco, California

Filed August 20, 2019

Before:  Ronald M. Gould and Sandra S. Ikuta, Circuit Judges, and Benita Y. Pearson,[*] District Judge.

Opinion by Judge Pearson

---

## SUMMARY[**]

---

### ERISA / Arbitration

The panel reversed the district court's order denying defendants' motion to compel arbitration of claims and remanded in a class action suit brought by a former participant in an ERISA retirement plan, alleging that defendants violated ERISA and breached their fiduciary duties by including certain investment funds in the plan.

The panel concluded that *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984), which held that ERISA claims are not arbitrable, is no longer good law in light of intervening Supreme Court case law, including *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013).

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel addressed other issues in a concurrently filed memorandum disposition.

## COUNSEL

Howard Shapiro (argued), Stacey C.S. Cerrone, and Tulio D. Chirinos, Proskauer Rose LLP, New Orleans, Louisiana; Myron D. Rumeld, Proskauer Rose LLP, New York, New York; John E. Roberts, Proskauer Rose LLP, Boston, Massachusetts; for Defendants-Appellants.

James Bloom (argued), Todd M. Schneider, and Kyle G. Bates, Schneider Wallace Cottrell Konecky Wotkyns LLP, Emeryville, California; Todd S. Collins, Eric Lechtzin, Shanon J. Carson, and Ellen T. Noteware, Berger Montague PC, Philadelphia, Pennsylvania; for Plaintiff-Appellee.

## OPINION

PEARSON, District Judge:

Defendants appeal the district court's denial of their motion to compel individual arbitration in an ERISA action filed by Michael Dorman, a former participant in the Schwab Retirement Savings and Investment Plan (the "Plan"). Dorman participated in a defined contribution 401(k) retirement plan through his employment with Charles Schwab & Co., Inc. ("Schwab"). In 2017, Dorman filed a class action suit in district court alleging that Defendants violated ERISA and breached their fiduciary duties by including Schwab-affiliated investment funds in the Plan—despite the funds' poor performance—to generate fees for Schwab and its affiliates. Defendants moved to compel

arbitration pursuant to an arbitration agreement in the Plan. The district court denied the motion, and this interlocutory appeal followed.

On appeal, Defendants contend that the district court erred by not enforcing the Plan's arbitration agreement. We address these arguments in a concurrently filed memorandum disposition. But before we can reach the parties' specific contentions, we must first address the threshold question of whether ERISA claims can be subject to mandatory arbitration. In so doing, we must revisit our holding in *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984), in which we held that ERISA claims were not arbitrable. In light of intervening Supreme Court case law, including *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), we conclude that our holding in *Amaro* is no longer good law.

# I

Michael Dorman was employed at Schwab from February 17, 2009, until October 8, 2015. Through his employment, Dorman joined the Plan in 2009, and he voluntarily contributed to his retirement account through payroll deductions until he left his employment with Schwab. Dorman withdrew his full account balance on December 18, 2015, and ceased participating in the Plan.[1]

In this defined contribution 401(k) retirement plan, Plan participants are given the choice to allocate their earnings among a menu of investment funds, and they may alter their

---

[1] In a separate memorandum filed concurrently with this opinion, we address Defendants' challenges to the district court's denial of their motions to compel individual arbitration and for leave to move for reconsideration and reverse.

investment allocations at any time. During the relevant period, the Plan offered as many as 17 different funds in which participants could choose to invest, including both Schwab-affiliated and unaffiliated funds.

In December 2014, the Plan was amended to add an arbitration provision. That provision took effect on January 1, 2015, nine months before Dorman ended his employment at Schwab and nearly a year before he terminated his participation in the Plan. The Plan document states that "[a]ny claim, dispute or breach arising out of or in any way related to the Plan shall be settled by binding arbitration . . . ." The arbitration provision includes a waiver of class or collective action that requires individual arbitrations, even if absent the waiver Dorman could have represented the interests of other Plan participants. It states that any arbitration would be conducted "on an individual basis only, and not on a class, collective or representative basis," and that Plan participants waive the right to be part of any class action. If that waiver of collective action were to be held unenforceable, the arbitration provision mandates that "any claim on a class, collective or representative basis shall be filed and adjudicated in a court of competent jurisdiction, and not in arbitration."

In 2014, Dorman was promoted to financial consultant, and he enrolled in the Schwab Investor Financial Consultant Compensation Plan (the "Compensation Plan"). By enrolling in the Compensation Plan, Dorman agreed to arbitrate "[a]ny controversy, dispute, or claim arising out of or relating to [his] employment . . . ." By its terms, the arbitration provision encompassed claims that arise out of "federal, state, or local law." The arbitration agreement carved out "claims for benefits" under the Plan and provided that such "claims for benefits" would be resolved pursuant

to the procedures prescribed by the Plan.  The Compensation Plan further contains a "Class Action Waiver."

In June 2017, Dorman filed his First Amended Class Action Complaint against Defendants, asserting claims under § 502(a)(2) and (3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2) and (3), and seeking plan-wide relief on behalf of a class comprising all participants in, and beneficiaries of, the Plan at any time within six years of the filing of the Complaint.  The Complaint alleges that various Defendants breached their fiduciary duties of loyalty and prudence and violated ERISA's prohibited transaction rules by selecting for inclusion in the Plan investment funds that are affiliated with Schwab.  According to the Complaint, the Schwab-affiliated funds performed poorly but were kept in the Plan solely to generate fees for Schwab and its affiliates.  The Complaint also alleges that members of the Board of Directors of Charles Schwab & Co. breached their duty to monitor the Plan fiduciaries who selected the investment funds for inclusion in the Plan.  The Complaint further asserts claims for co-fiduciary breach and knowing participation in a breach against various Defendants.

In response to the Complaint, Defendants moved to compel individual arbitration of the asserted claims pursuant to the arbitration agreements in the Plan and the Compensation Plan.

On January 18, 2018, the district court denied Defendants' motion, holding that neither agreement required the claims asserted in the Complaint to be arbitrated.  In the district court's view, neither of the two arbitration provisions applied to the claims in the Complaint.  The district court erroneously held that the arbitration provision in the Plan document was inapplicable because the provision was

enacted after Dorman's participation in the Plan ended, and it thus did not bind him. With respect to the Compensation Plan's arbitration agreement, the district court concluded that "it is not clear" that the asserted ERISA claims arose out of Dorman's employment at Schwab as required by that agreement. It also held that the claims were "claims for benefits" that were expressly carved out of the arbitration agreement in the Compensation Plan.

As an alternative basis for denying Defendants' motion, the district court held that even if the claims asserted in the Complaint did fall within the scope of one or more of the arbitration agreements, the agreements would be unenforceable on two grounds. According to the district court, Dorman's claims were brought "on behalf of the Plan"—not on his own behalf—and without the Plan's consent he "cannot waive rights that belong to the Plan, such as the right to file this action in court." (citing *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999) (holding that a plan participant cannot settle an ERISA § 502(a)(2) claim without the plan's consent). The district court acknowledged that the Plan did consent to arbitration "by virtue of its Plan Document's arbitration provision," but it erroneously held that consent invalid because the Plan fiduciaries added the arbitration provision to the Plan document after they were sued. [2] The district court cited *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009), which held that plan

---

[2] After filing their Notice of Appeal, Defendants sought leave to file a motion for partial reconsideration of the district court's order. Defendants asked the district court to reconsider its ruling that the Plan document's arbitration provision did not take effect until after Dorman ceased participating in the Plan. Defendants submitted evidence that the arbitration provision took effect while Dorman was still a Plan participant; however, the district court denied leave to move for reconsideration.

fiduciaries cannot insulate themselves from fiduciary responsibility by amending a plan document. *Id.* at 1080. In the district court's view, allowing Plan fiduciaries to amend the Plan document to consent to arbitration would "in a sense, be allowing the fox to guard the henhouse." (quoting *Munro v. Univ. of S. Cal.*, No. CV 16-6191-VAP (CFEx), 2017 WL 1654075, at *6 (C.D. Cal. Mar. 23, 2017)).

Finally, the district court held that this court's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *reversed by Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018), further precludes arbitration. According to the district court, *Morris* holds that class-action waivers that are required as a condition of employment violate the National Labor Relations Act ("NLRA") and are, therefore, unenforceable. This interlocutory appeal followed.

## II

Over 35 years ago, in *Amaro v. Continental Can Co.* we wrote that ERISA mandated "minimum standards [for] assuring the equitable character of [ERISA] plans" that could not be satisfied by arbitral proceedings. 724 F.2d at 752. We reasoned that "[a]rbitrators, many of whom are not lawyers, lack the competence of courts to interpret and apply statutes as Congress intended." *Id.* at 750 (internal citation omitted). In *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006), we acknowledged in dicta that our past "expressed skepticism about the arbitrability of ERISA claims . . . seem[ed] to have been put to rest by the Supreme Court's opinions." *Id.* at 1100 (citing *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226(1987)).

Since *Amaro*, the Supreme Court has ruled that arbitrators are competent to interpret and apply federal statutes. *See, e.g.*, *Am. Express Co.*, 570 U.S. at 233 (holding

that there is nothing unfair about arbitration—even arbitration on an individual basis—as long as individuals can vindicate their statutory rights in the arbitral forum). Recently, in *Munro v. Univ. of S. Cal.*, 896 F.3d 1088 (9th Cir. 2018), we noted that "there is considerable force" to the argument that *Amaro* has been overruled. *Id.* at 1094 n.1.[3] We agree.

Generally, a three-judge panel may not overrule a prior decision of the court. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). If, however, "an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point[,]" the three-judge panel may then overrule prior circuit authority. *Id.* The issue decided by the higher court need not be identical. *Id.* at 900. The appropriate test is whether the higher court "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.*

"[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller*, 335 F.3d at 893. The holding in *American Express Co.* that federal statutory claims are generally arbitrable and arbitrators can competently interpret and apply federal statutes, 570 U.S. at 233, constitutes intervening Supreme Court authority that

---

[3] Even before *Munro*, we had begun to question the force of *Amaro*. *See Comer* at 1101("Curiously, however, we have echoed the doubts expressed in *Amaro* without taking account of the intervening Supreme Court cases." (collecting cases)).

is irreconcilable with *Amaro*.  *Amaro,* therefore, is no longer binding precedent.

**REVERSED** and **REMANDED**.