In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-2708

JAMES SMITH, on behalf of himself and all others similarly situated, and on behalf of the Triad Manufacturing, Inc., Employee Stock Ownership Plan,

*Plaintiff-Appellee,*

*v.*

BOARD OF DIRECTORS OF TRIAD MANUFACTURING, INC., *et al.,*

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-02350 — **Ronald A. Guzmán**, *Judge.*

———————————

ARGUED MARCH 30, 2021 — DECIDED SEPTEMBER 10, 2021

———————————

Before KANNE, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* In this complex ERISA case, James Smith sued fiduciaries of the retirement plan offered by his former employer, Triad Manufacturing, Inc., for alleged financial misconduct. Add in a class action, an arbitration provision, and issues of notice and consent to plan amendments, and this lawsuit gets even more complicated.

The correct resolution here is straightforward, though. The ERISA provisions Smith invokes have individual and plan-wide effect. But the arbitration provision in Triad's defined contribution retirement plan precludes relief that "has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." Because that provision prohibits relief that ERISA expressly permits, we affirm the district court's denial of Triad's motion to compel arbitration or, in the alternative, to dismiss.

## I

### A

James Smith worked for Triad Manufacturing, Inc., a shelving and fixture company, from 2015 to 2016.[1] As part of his employment, Smith participated in Triad's Employee Stock Ownership Plan, a defined contribution employee retirement plan under the Employee Retirement Income Security Act. A defined contribution plan allows the employee or the employer (or both) to contribute to the employee's individual account (e.g., a 401(k) plan). By contrast, a defined benefit plan provides a fixed monthly benefit based on a general pool of assets (e.g., a pension plan). *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439–40 (1999). ERISA governs both plans. 29 U.S.C. § 1002 (34), (35).

Triad's board of directors, including shareholders David Caito, Robert Hardie, and Michael McCormick, created the plan for its employees in early December 2015. The plan

---

[1] We draw the relevant facts from Smith's complaint and accept those well-pleaded as true in resolving Triad's motion. We also consider documents, like the plan itself, submitted with that motion.

provides that "[t]he Primary Sponsor reserves the right at any time to modify or amend or terminate the [plan] in whole or in part." The primary sponsor, per the plan, is Triad through its board.

On December 17, 2015, Caito, Hardie, and McCormick sold all of Triad's stock to the plan, which at $58.05 per share totaled more than $106 million. Triad's board appointed GreatBanc Trust Company as plan trustee on December 21, 2015, and GreatBanc approved the transaction in short order, seemingly after it had already occurred.[2] Notably, the plan's holdings consisted entirely of Triad stock.

Triad's share price then dropped to $1.85 on December 31, 2015, according to the plan's financial statements. What had been valued at over $106 million plummeted in two weeks to just under $4 million. But under the plan's provisions, no participant could sell their shares until they vested—at the earliest, on December 31, 2016, for some employees. As of December 31, 2018, Triad's share price dipped to less than one dollar per share.

Caito, Hardie, and McCormick, though, seem to have benefited from the transaction. The plan financed its purchase of their shares through loans provided by the three men. Triad guaranteed these loans, charged against the company's equity that had just been purchased by the plan. The plan also required Triad to make retirement contributions in amounts no less than necessary to service the loan payments. So Caito,

---

[2] GreatBanc did not move to compel or dismiss with the rest of the defendants, but rather answered the complaint. It is not a party to this appeal.

Hardie, and McCormick received repayment on the loans—at least in theory—no matter Triad's financial situation.

On July 17, 2018, Triad's board, as the plan's primary sponsor, amended the plan to include an arbitration provision with a class action waiver. That amendment includes a subsection, "(a) <u>Covered Claims</u>," requiring binding arbitration for any claim "which arises out of, relates to, or concerns this [plan], including without limitation, any claim for benefits under the [plan]; any claim asserting a breach of, or failure to follow, the [plan]; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the [Internal Revenue] Code." Another subsection—entitled "(b) <u>No Group, Class, or Representative Arbitrations</u>"—warrants emphasis here. That subsection requires, in relevant part, that:

- "All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis."; and

- "Each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant."

That subsection also, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under § 409, expressly limits the Claimant's remedy. What is more, "[i]n the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure … shall be rendered null and void in all

respects as to the particular claim that is the subject of that court's ruling." In other words, the arbitration provision is nonseverable, at least for the claim at issue in its invalidation. Smith, though, contends that he received no notice of this arbitration provision before its addition to the plan.[3]

**B**

In April 2020, Smith filed a class action complaint against Triad's board, Caito, Hardie, and McCormick (collectively, the "board defendants"), as well as GreatBanc, under 29 U.S.C. § 1132(a)(2) and (a)(3). The December 2015 transaction between Triad and the plan, according to Smith, violated numerous ERISA provisions. Three of the alleged violations are relevant here. In Count II, Smith alleged that the board defendants breached their fiduciary duties by failing to monitor fellow fiduciary GreatBanc as plan trustee, in violation of 29 U.S.C. § 1104(a)(1)(A) and (B).[4] Smith alleged in Count IV that the board defendants engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a). And according to Smith in Count V, the board defendants knowingly participated in GreatBanc's fiduciary violations, in violation of 29 U.S.C. § 1105(a)(1) and (a)(3).

---

[3] According to Smith, the district court made a factual finding that he received no notice of the arbitration provision. But what the district court said was that a certain argument—that only the plan's consent matters— "might have more force had defendants offered evidence that plaintiff had received notice of the amendment." Either way, our resolution of this appeal does not turn on this issue.

[4] In Count I, Smith alleged that GreatBanc breached its fiduciary duty, in violation of 29 U.S.C. § 1104(a)(1)(A) and (B). In Count III, Smith alleged that GreatBanc engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a).

Smith's prayer for relief was wide-ranging. As relevant here, Smith requested that the district court "[r]emove Great-Banc as the Trustee of the Triad [plan] or bar it from serving as a fiduciary of the [plan] in the future" and that it "[a]ppoint a new independent fiduciary to manage the Triad [plan] and order the costs of such independent fiduciary be paid for by Defendants." He also asked that the district court "[a]ward such other and further relief" under § 1132(a)(2) and/or (a)(3), Federal Rule of Civil Procedure 54(c), "or that is equitable and just."

Based on the class action waiver, the board defendants then moved to compel arbitration or, in the alternative, to dismiss Smith's claims under Federal Rules of Civil Procedure 12(b)(3) or (b)(6). The district court denied that motion on two grounds. First, assuming that ERISA claims are generally arbitrable—a question this court has not yet addressed—and applying Missouri state law (per the parties' mutual contention), the district court held that because Smith had not consented to the arbitration provision, it could not bind him. Smith's work with Triad ended in 2016, the arbitration provision came in 2018, and no evidence had been offered that Smith received notice of the amendment. For the district court, it was Smith's consent, and not the plan's consent (through the primary sponsor, Triad), that mattered. That court thus rejected the Ninth Circuit's analysis in *Dorman v. Charles Schwab Corp.* (*Dorman II*), 780 F. App'x 510, 513 (9th Cir. 2019) (unpublished memorandum opinion), which

enforced a similar ERISA arbitration provision unilaterally added by the plan sponsor.[5]

Second, the district court relied on *American Express Co. v. Italian Colors Restaurant* to hold the arbitration provision unenforceable because it prospectively waived Smith's right to statutory remedies provided by ERISA. 570 U.S. 228, 235–36 (2013). The plan's arbitration provision, the district court reasoned, prohibited plan-wide statutory remedies that ERISA permits under §§ 1132(a)(2) and 1109(a), so it could not be enforced. The district court again disagreed with *Dorman II*, 780 F. App'x at 515, rejecting the Ninth Circuit's determination that individualized arbitration for claims concerning a defined contribution plan, as here, accorded with ERISA. After the district court denied the motion, this appeal followed.

## II

The board defendants moved to compel arbitration or to dismiss under Rules 12(b)(3) or (b)(6), and we construe their motion as one to compel. *See Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (noting that "[i]t is the substance of a motion that counts, not its label" when resolving a jurisdictional issue over Rule 12(b)(3) and the Federal Arbitration Act on interlocutory appeal). The standard for reviewing a ruling on a motion to compel arbitration "turns on the procedural posture of that ruling." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 751 (7th Cir. 2017). The district court's resolution here turned on legal, not factual, issues, so our review is de novo. *See id.* at 751–52. And our

---

[5] The same day the Ninth Circuit issued a companion published case, *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1112 (9th Cir. 2019), which we refer to as *Dorman I.*

"interpretation of language in a plan governed by ERISA is controlled by federal common law, which draws on general principles of contract interpretation, at least to the extent that those principles are consistent with ERISA." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012).

## A

We begin with the ERISA provisions relevant here. Section 1132(a)(2) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." In turn, § 1109(a) imposes liability for any fiduciary who breaches his duties to the plan and holds him "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." That provision also authorizes "other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). Taken together, § 1109(a) creates fiduciary liability, and § 1132(a)(2) allows for its enforcement.

In *Massachusetts Mutual Life Insurance Co. v. Russell*, the Supreme Court examined these provisions in the context of a defined benefit plan. 473 U.S. 134, 136, 139 (1985). A plan participant in that case sued a fiduciary under § 1132(a) "for extra-contractual compensatory or punitive damages caused by improper or untimely processing" of her plan benefit claims, in violation of § 1109(a). *Id.* at 136. The Court held that § 1132(a) precluded such individualized relief. *Id.* at 139–44. Recovery under § 1132(a) for a violation of § 1109, the Court explained, benefits the whole defined benefit plan. *Id.* at 140. This was because the "principal statutory duties" under

§ 1109(a) are those that "relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Id.* at 143–44 (footnote omitted). In addition, "[a] fair contextual reading of the statute ma[de] it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 144 (footnote omitted). So for the Court, "the entire text of § [1109] persuade[d] [it] that Congress did not intend that section to authorize any relief except for the plan itself." *Id.* at 142. Because the plan participant alleged an individualized, and not plan-wide, harm, § 1132(a) provided no viable cause of action. *Id.*

The Court revisited §§ 1132(a) and 1109(a) in *LaRue v. DeWolff, Boberg & Associates, Inc.*, albeit in the defined contribution plan context. 552 U.S. 248, 250 (2008). There, a plan participant alleged that a fiduciary's misconduct—failing to make certain changes to his 401(k) account—had "'depleted' his interest in the [defined contribution plan] by approximately $150,000, and amounted to a breach of fiduciary duty under ERISA." *Id.* at 251. The Court held that § 1132(a) *permitted* such individualized relief, distinguishing *Russell* in the process. *Id.* at 253–56. "Unlike the defined contribution plan" in *LaRue*, "the disability plan at issue in *Russell* did not have individual accounts; it paid a fixed benefit based on a percentage of the employee's salary." *Id.* at 255. And so "[t]he 'entire plan' language in *Russell*," the Court noted, "speaks to the impact of § 409 on plans that pay defined benefits." *Id.* at 255. Put another way, "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape

of employee benefit plans. That landscape has changed." *Id.* at 254.

The difference between a defined benefit plan and a defined contribution plan was dispositive in *LaRue*. *Id.* at 254-55. As the Court explained, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *Id.* at 255. But "[f]or defined contribution plans," misconduct by a fiduciary "need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. The defined contribution plan participant in *LaRue*—unlike the defined benefit plan participant *Russell*— alleged fiduciary misconduct that fell "squarely within" § 1109, so the Court permitted his claim under § 1132(a). *Id.* at 253, 256. With *Russell* cabined to defined benefit plans, *LaRue* concluded "that although § [1132(a)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* at 256.

**B**

Against this backdrop, we begin with a threshold issue: whether ERISA claims are arbitrable as a general matter.

Under the Federal Arbitration Act, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, … shall be valid, irrevocable, and enforceable," except for "such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. The FAA allows a party to an arbitration agreement to petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. And "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Put differently, we must "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation marks omitted). The FAA, as the Court said recently, "establishes 'a liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Claims under federal statutes are no exception. In *Shearson/American Express, Inc. v. McMahon*, the Court explained that "standing alone," the FAA "mandates enforcement of agreements to arbitrate statutory claims." 482 U.S. 220, 226 (1987). But "[l]ike any statutory directive," the FAA's "mandate may be overridden by a contrary congressional command." *Id.* In *CompuCredit Corp. v. Greenwood*, the Court reiterated this understanding, 565 U.S. 95, 98 (2012), and the Court confirmed it again in *Italian Colors*. 570 U.S. at 233.

In ERISA, we see no "contrary congressional command" precluding arbitration. True, ERISA provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter." 29 U.S.C. § 1132(e)(1). Yet similar provisions in other statutory schemes have not prevented the Court from permitting arbitration. In

*McMahon*, for example, 482 U.S. at 227, the Court enforced an arbitration agreement covering claims under the Securities Exchange Act of 1934, even though per 15 U.S.C. § 78aa "exclusive jurisdiction of violations" is granted to "[t]he district courts of the United States." *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632–37 (1985) (enforcing arbitration agreement for claims under the Clayton Act, which contained similar jurisdictional provision in 15 U.S.C. § 15(a)). As the Court stated later, it has "repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court." *CompuCredit Corp.*, 565 U.S. at 100–01 (collecting cases).

Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable. *See, e.g., Dorman I*, 934 F.3d at 1112; *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993); *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478–79 (8th Cir. 1988); *see also Simon v. Pfizer Inc.*, 398 F.3d 765, 774–75 (6th Cir. 2005) (noting, but not deciding, this issue). So the FAA applies with full force to claims under ERISA. *See* G. Richard Shell, *ERISA and Other Federal Employment Statutes: When Is Commercial Arbitration an "Adequate Substitute" for the Courts?*, 68 TEX. L. REV. 509, 572–73 (1990) ("A careful review of ERISA discloses that, if Congress intended anything with respect to enforcement of the FAA, it intended to preserve the full application of the FAA in ERISA cases.").

## C

The pivotal question here is whether *this* ERISA arbitration provision is enforceable. We conclude the answer is no.

*Italian Colors* shows the way. In that case, the Court located "no contrary congressional command" precluding arbitration in the Sherman Antitrust Act, upholding an arbitration provision that waived class arbitration. 570 U.S. at 235 (internal quotation marks omitted). That ruling, though, did "not end the case." *Id.* Plaintiffs there also "invoke[d] a judge-made exception to the FAA which," in their words, "serve[d] to harmonize competing federal policies by allowing courts to invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Id.* "[N]o economic incentive to pursue their antitrust claims individually in arbitration" existed, so enforcement of the class arbitration waiver would bar "effective vindication" of their statutory rights, plaintiffs argued. *Id.*

But that argument left the Court unpersuaded. *Id.* at 236. The "effective vindication" exception, it explained, "originated as dictum in *Mitsubishi Motors*." *Id.* at 235. As described in *Italian Colors*, *Mitsubishi Motors* "expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] … as a prospective waiver of a party's right to pursue statutory remedies.'" *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19 (alteration in original) (emphasis omitted)). Willingness, however, did not translate into action; the Court in *Mitsubishi Motors* upheld the arbitration agreement at issue. 473 U.S. at 637–38. "Subsequent cases" after *Mitsubishi Motors* "similarly asserted the existence of an 'effective vindication' exception," although they "similarly declined to apply it to invalidate the arbitration agreement at

issue." *Italian Colors*, 570 U.S. at 235 (footnote omitted) (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273–274 (2009); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)).

The Court in *Italian Colors* likewise declined that invitation. There, the class action arbitration waiver "merely limit[ed] arbitration to the two contracting parties," so "[i]t no more eliminat[ed] those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938." *Italian Colors*, 570 U.S. at 236. But *Italian Colors* did not entirely shut the door to the "effective vindication" exception, explaining that it "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.*

Although rare, we conclude that is what happened here. Recall that Smith invokes § 1132(a)(2)'s cause of action to seek relief for (alleged) fiduciary breaches under § 1109(a). That relief, by statute, includes "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). Yet the plan's arbitration provision, which also contains a class action waiver, precludes a participant from seeking or receiving relief that "has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." Removal of a fiduciary—a remedy expressly contemplated by § 1109(a)—would go beyond just Smith and extend to the entire plan, falling exactly within the ambit of relief forbidden under the plan.

All this is to say that the plain text of § 1109(a) and the terms of the arbitration provision cannot be reconciled: what the statute permits, the plan precludes. In that way, the plan's arbitration provision acts as a "prospective waiver of a party's

right to pursue statutory remedies," *Mitsubishi Motors*, 473 U.S. at 637 n.19, so the "effective vindication" exception applies. *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016) (applying "effective vindication" exception when an "arbitration agreement use[d] its 'choice of law' provision to waive all of a potential claimant's federal rights."). And because the plan's arbitration provision is nonseverable, no claim under § 1132(a)(2) may be arbitrated.

To reiterate, the problem with the plan's arbitration provision is its prohibition on certain plan-wide remedies, not plan-wide representation. It is not that the plan funnels its participants away from class actions. The Court has blessed that arbitration maneuver many times, including under the National Labor Relations Act in *Epic Systems*, 138 S. Ct. at 1632, the Sherman Act in *Italian Colors*, 570 U.S. at 238–39, the Credit Repair Organization Act in *CompuCredit*, 565 U.S. at 100, and the Age Discrimination in Employment Act in *Gilmer*, 500 U.S. at 35. Indeed, *Epic Systems* explained as much. 138 S. Ct. at 1627–28 (collecting these cases). Nor is individualized arbitration inherently incompatible with ERISA. Because Smith participated in a defined contribution plan, *Larue*, and not *Russell*, governs, and the Court made clear in *Larue* that § 1132(a) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account." 552 U.S at 256 (emphasis added); *see Rogers v. Baxter Int'l, Inc.*, 521 F.3d 702, 705 (7th Cir. 2008) (noting that under *LaRue*, §§ 1132(a)(2) and 409(a) "may be used by the beneficiary of a defined-contribution account that suffers a loss, even though other participants are uninjured by the acts said

to constitute a breach of fiduciary duty").[6] The bottom line is that our holding turns on the impermissible relief, and not the chosen vehicle, for ERISA claims under the plan here.

The board defendants disagree. Turning again to the Ninth Circuit's decision in *Dorman II*, they contend that individualized arbitration can provide Smith and other plan participants with all the relief available to them under ERISA, and so the plan's arbitration provision—with its class action waiver—should be enforced. The board defendants also tell us that Smith has not borne his burden in showing that the FAA and ERISA "cannot be harmonized" under *Epic Systems*, 138 S. Ct. at 1614. The FAA, they assert, must prevail.

Smith's prayer for relief shows the flaws in that thinking. Take for example his request that the district court remove GreatBanc as plan trustee, or that the court appoint a new independent fiduciary. Just like the removal of a fiduciary, the appointment of a new one cannot have anything *but* a plan-wide effect. The same is true for removing GreatBanc as plan trustee. Both examples would have "the purpose or effect of providing additional benefits or monetary or other relief" to

---

[6] Throughout Smith's brief he contends that *Russell* remains relevant to our inquiry in this defined contribution plan context, claiming that it "involved a welfare plan, not a defined benefit plan." But *LaRue* treated *Russell* as a defined benefit plan case, and so will we. *LaRue*, 552 U.S. at 256 ("Consequently, our references to the 'entire plan' in *Russell*, which accurately reflect the operation of § [1109] in the defined benefit context, are beside the point in the defined contribution context."). We place no emphasis on language in footnote nine of *Russell*—arguably, dicta—that "[i]nclusion of the Secretary of Labor [in § 1132(a)(2)] is indicative of Congress' intent that actions for breach of fiduciary duty be *brought in a representative capacity* on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9 (emphasis added).

someone other than Smith, so neither would be permitted under the plan's arbitration provision. In that sense, the conflict in need of harmonization is not between the FAA and ERISA; it is between ERISA and the plan's arbitration provision, which precludes certain remedies that §§ 1132(a)(2) and 1109(a) expressly permit. What is more, we see no conflict with *Dorman II*, either. 780 F. App'x at 513–15. The arbitration provision in that case, as far as we can tell, lacked the problematic language present here. *Dorman v. Charles Schwab & Co. Inc.*, No. 17-cv-00285-CW, 2018 WL 467357, at *2 (N.D. Cal. Jan. 18, 2018) (reciting arbitration provision). The plan here is different from the plan in *Dorman*, and so are the resolutions.

In closing, we note the limits of our holding, as well as its lessons. We express no view on whether Smith consented to the arbitration provision, whether he received notice of that provision, or even whether a plan's sponsor can unilaterally amend the plan to include such a provision. In addition, Smith does not parcel out what relief he seeks under § 1132(a)(2) and what relief he seeks under § 1132(a)(3). In this case, we hold only that the "effective vindication" exception bars application of the plan's arbitration provision to claims under § 1132(a)(2). Whether Smith's claims, and those of other plan participants, under § 1132(a)(3) are barred is a question best left for another day. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 452–53 (7th Cir. 2016) (thoroughly cataloguing the Supreme Court's precedents involving relief under § 1132(a)(3)). In the end, the "effective vindication" exception may be rare, but it applies here.

### III

For these reasons, we AFFIRM the district court's denial of the board defendants' motion to dismiss or compel arbitration.