**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11192

————————————

EBONI WILLIAMS,

DEBBIE SHOEMAKER,

PAULA MAYS,

TINA KOVELESKY,

SHADRIN HERRING,

as representatives of a class of similarly
situated persons, and on behalf of the
A360, Inc. Profit Sharing Plan f.k.a.
A360, Inc. Employee Stock Ownership Plan,

*Plaintiffs-Appellees,*

*versus*

GERALD SHAPIRO,

SCOTT BRINKLEY,

ARGENT TRUST ARGENT TRUST COMPANY,

A360 HOLDINGS LLC,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-03236-VMC

_____

Before JORDAN and NEWSOM, Circuit Judges, and HONEYWELL, District Judge.[*]

JORDAN, Circuit Judge:

This action involves claims under the Employee Retirement Income Security Act asserted by participants in a terminated employee stock ownership plan. *See* 29 U.S.C. §§ 1001 *et seq.* Before us is the district court's denial of the defendants' motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(C) ("An appeal may be taken from . . . an order . . . denying an application under [§] 206 of this title to compel arbitration[.]"). Following review of the record, and with the benefit of oral argument, we affirm because the arbitration provision forbids the plaintiffs from asserting substantive rights (like plan-wide relief) under ERISA.

**I**

In 1971, Gerald Shapiro started his own law firm specializing in mortgage foreclosure. Mr. Shapiro also built a consulting, administration, technology, and data services business to support his law firm, mortgage investment firms, real estate firms, and other law firms. In November of 2016, he created a new entity, A360, Inc.,

_____

[*] Honorable Charlene Edwards Honeywell, United States District Judge for the Middle District of Florida, sitting by designation.

to consolidate his interests in his non-legal services enterprise. Scott Brinkley served as A360's CEO.

A360 established an employee stock ownership plan to help its employees save for retirement. An employee stock ownership plan invests primarily in the company's own stock.

The plan was a "defined contribution plan" under ERISA. A defined contribution plan, as opposed to a defined benefit plan, is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). Employees contributed to the plan to accumulate allocated shares; they then had the option to "sell their shares upon retirement for a nice nest egg." D.E. 69 ¶ 8.

In January of 2017, the plan purchased 1,000,000 shares of A360 stock for $30 million, making the plan the company's sole owner. In September of 2019, A360 and its trustee, Argent Trust Company, sold the plan's A360 shares to A360 Holdings, LLC for approximately $34.6 million.

Simultaneously, A360 amended the plan document by adding an arbitration clause. The amendment, entitled "ERISA Arbitration and Class Action Waiver," provides that "all Covered Claims must be resolved exclusively pursuant to the provisions of this Section [i.e., the 'Arbitration Procedure']." D.E. 44-1 at 70. Covered claims include "[a]ny claim made by or on behalf of a current or

former Employee, a current or former Participant or current or former Beneficiary or by or on behalf of the Plan, the Trust or under the Trust Agreement (a "Claimant") . . . including without limitation claims for breach of fiduciary duty." *Id.* The Arbitration Procedure prohibits "Group, Class, or Representative Arbitrations." *Id.* at 71.

The Arbitration Procedure bears quoting in full, and reads as follows:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any individual or entity other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's individual Account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's individual Account, and/or (iii) such other remedial or equitable relief as the arbitrator(s) deem(s) proper so long as such remedial or equitable relief does not include or result in the provision of additional

> benefits or monetary relief to any individual or entity other than the Claimant, and is not binding on the Committee or Trustee with respect to any individual or entity other than the Claimant.

*Id.* It further states that "[i]n the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure (i.e., all of this Section [ ]) shall be rendered null and void in all respects." *Id.* at 71–72.[1]

Five days after making this amendment to the plan document, A360 terminated the plan. From October of 2019 to December of 2021, the plan distributed the proceeds from the stock sale to the plan's participants. Today, the plan has no assets.

In September of 2022, a number of plan participants—Eboni Williams, Debbie Shoemaker, Paula Mays, Tina Kovelesky, and Shadrin Herring—filed this action in federal district court under ERISA and sought to represent a class of approximately 280 plan participants. They alleged that the defendants—Messrs. Shapiro and Brinkley, Argent, and A360 Holdings—unlawfully caused the plan to be terminated and "its 'unallocated' shares to be redeemed by the company for less than fair market value." D.E. 69 ¶ 1. Specifically, they asserted that the plan lost $35.4 million when the defendants schemed to sell the stock for $34.6 million because, in actuality, the stock was worth approximately $70 million.

---

[1] The addition of the Arbitration Procedure was the third amendment to the plan document, and we therefore sometimes refer to it as the third amendment.

A month later, A360 again amended the plan document with the following language: "Notwithstanding the foregoing, nothing in this provision [the Arbitration Procedure] shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary even if such injunctive relief has an incidental impact on an individual or entity other than the Claimant." D.E. 44-1 at 76. This was the fourth amendment to the plan document.

The plaintiffs then amended their complaint and asserted the following claims under ERISA: (1) causing prohibited transactions in violation of 29 U.S.C. § 1106(a); (2) engaging in prohibited transactions between the plan and a fiduciary in violation of § 1106(b); (3) breaching the fiduciary duties of prudence and loyalty in violation of § 1104(a)(1); (4) knowingly participating in the breach, giving rise to co-fiduciary liability under § 1105(a); (5) knowingly participating in prohibited transactions in violation of § 1132(a)(3); (6) knowingly participating in breaches of the duties of prudence and loyalty, also in violation of § 1132(a)(3); and (7) breaching the terms of the plan in violation of § 1132(a)(3)(A). The plaintiffs sought recovery for injuries to the plan "sustained as a result of prohibited transactions and fiduciary breaches during the statutory period," as well as "equitable relief on behalf of the [plan] as a whole." D.E. 69 ¶ 108. They specifically requested disgorgement of profits and restitution for losses to the plan. And they sought to reform the plan document to eliminate the third and fourth amendments, and to rescind the plan's stock purchase agreement.

The defendants moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, based on the two amendments to the plan document. The district court ruled that the individual plan participants "gave no assent" to arbitrate their claims for rescission and restitution. *See Williams v. Shapiro*, 724 F. Supp. 3d 1295, 1307–08 (N.D. Ga. 2024) (noting that "[c]ourts have rigidly adhered to the distinction between claims brought individually and claims brought on behalf of plans in determining whether an otherwise valid arbitration clause covers a given claim"). The court held, however, that the plan itself "maintained a legal existence such that it could assent to arbitration" through the third and fourth amendments to the plan document. *See id.* at 1308.

The district court nevertheless denied the defendants' motion to compel arbitration and invalidated the Arbitration Procedure because ERISA authorizes plan-wide relief, and the Arbitration Procedure specifically prohibits such relief. *See id.* at 1309–14. Because the Arbitration Procedure is by its own terms non-severable, the court held that it was entirely unenforceable. *See id.* at 1314.

On appeal, the defendants argue that the plaintiffs' substantive statutory right is to assert claims relating to their individual plan accounts, and that this right is sufficiently vindicated in individual arbitration as required by the Arbitration Procedure. The defendants also contend that the district court erred in ruling that the individual plaintiffs did not assent to arbitration because their participation in the plan constituted their assent to be bound by the plan document, including the Arbitration Procedure.

## II

"We review *de novo* a denial of a motion to compel arbitration as well as a district court's interpretation of an arbitration agreement." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1212 (11th Cir. 2021) (citing *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263 (11th Cir. 2017)).

## III

ERISA "obligates private employers offering pension plans to adhere to an array of rules designed to ensure plan solvency and protect plan participants." *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 472 (2017) (citation omitted). We assume without deciding that "ERISA claims are generally arbitrable." *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) ("[j]oining every other circuit to consider the issue"). *See generally CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (explaining that "federal statutory claims" are arbitrable "unless the FAA's mandate has been overridden by a contrary congressional command") (internal quotation marks and citation omitted); *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1030 (11th Cir. 2003) ("Federal statutory claims are as a rule arbitrable[.]") (citation omitted).

The Supreme Court has explained that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It "establishes that, as a matter of

federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Id.* at 24–25.

Significantly, however, "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). Accordingly, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum." *Id.* (quoting *Preston v. Ferrer*, 552 U.S. 346, 359 (2008)) (alterations adopted).

The effective vindication doctrine invalidates arbitration provisions that prospectively waive "a party's right to pursue statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). The key question is whether "the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Id.* (internal quotation marks omitted).

## A

The defendants argue that the district court erred by embracing the effective vindication doctrine because it is judge-made and rooted in Supreme Court dicta. It is true that neither we nor the Supreme Court have applied the doctrine to strike down an otherwise enforceable arbitration provision. Yet whether we think judge-made doctrines are generally appropriate or wise is of little importance when the United States Supreme Court repeatedly acknowledges a doctrine's existence. *See Italian Colors*, 570 U.S. at 235–36 ("[Our] cases have similarly asserted the existence of an

'effective vindication' exception but have similarly declined to apply it to invalidate the arbitration agreement at issue. . . . And we do so again here.") (internal citations and footnote omitted).

"[T]he holding of a case is, as the Supreme Court observed, comprised both of the result of the case and 'those portions of the opinion necessary to that result . . . .'" *United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996)). The relevant holding in *Italian Colors* was that the effective vindication doctrine did not invalidate a certain arbitration clause. *See* 570 U.S. at 238–39. To reach that result, the Supreme Court had to set out the parameters of the doctrine. *See id.* at 236 (explaining that the doctrine finds its origin in the desire to prevent "prospective waiver of a party's *right to pursue* statutory remedies," and would "certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights") (emphasis added). It seems to us, therefore, that the discussion of the doctrine in *Italian Colors* cannot be passed off as mere dicta. *See Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1291 (11th Cir. 2015) (stating that in *Italian Colors* "the Supreme Court acknowledged the effective vindication doctrine," which had "originated as dictum in *Mitsubishi Motors*").

Moreover, even if the discussion of the effective vindication doctrine in several Supreme Court cases were in dicta, "dicta from the Supreme Court is not something to be lightly cast aside." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997). *See also Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("[T]here is dicta and then there is dicta, and then there is Supreme Court

dicta. This is not subordinate clause, negative pregnant, devoid-of-analysis, throw-away kind of dicta."). So, in *Gilmore v. Georgia Department of Corrections*, 144 F.4th 1259, 1259–63 (11th Cir. 2025) (en banc), we considered and gave some effect to a legal principle articulated by the Supreme Court in a number of cases even though the Court had not yet found the principle to be satisfied. For the reasons which follow, we adopt and apply the effective vindication doctrine today.

In the ERISA context, federal common law is interstitial but essential. As the Fifth Circuit has put it, "our power to create federal common law is premised on congressional authorization to fill interstitial gaps in the text of federal legislation, here, ERISA." *Coop. Ben. Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 329 (5th Cir. 2004). *Cf. United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593 (1973) ("[T]he inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts.").

As noted, our own cases recognize the existence of the effective vindication doctrine. *See Escobar*, 805 F.3d at 1291. *See also Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 547 (11th Cir. 2016) (quoting *Italian Colors* and explaining that the "'effective vindication doctrine' is one defense that the federal courts have recognized in the context of domestic arbitration"). And commentators do as well. *See* 13D Wright & Miller, Fed. Prac. & Proc. Juris. § 3569 (3d ed. 2015 & Sept. 2025 supp.) ("The Supreme Court has held that statutory claims can be submitted to arbitration. . . . It must be clear, however, that the arbitration procedure does not impose such

burdens as to deny effective vindication of the statutory relief.") (footnotes omitted); Lauren K. Valastro, *Vindicating Retirees*, 41 Ga. St. U. L. Rev. 257, 315 (2025) ("[F]ederal courts have not shied away from applying [the effective vindication doctrine] to invalidate arbitration provisions in the ERISA breach of fiduciary duty context.").

The effective vindication doctrine has been applied to the waiver of ERISA statutory rights by six of our sister circuits in the last five years. *See, e.g.*, *Parker v. Tenneco, Inc.*, 114 F.4th 786, 793 (6th Cir. 2024) (citing cases). And no circuits have rejected the doctrine. Thus, we elect to apply the doctrine in this case. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 91 (2d Cir. 2024) ("Bearing in mind a healthy regard for the federal policy in favor of enforcing valid arbitration agreements, we recognize that the effective vindication exception applies in rare cases where an arbitration agreement prevents parties from effectively vindicating their statutory rights.") (internal quotation marks and citation omitted and alterations adopted). [2]

---

[2] We have held that a public policy defense, under 9 U.S.C. § 207, "applies at the award-enforcement stage, not the initial arbitration-enforcement stage," pursuant to Article V of the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (the New York Convention). *See Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1267 (11th Cir. 2011) (discussing *Mitsubishi Motors Corp.*, 473 U.S. at 636). But our decision in *Lindo* was driven by Article V of the New York Convention, which addresses the recognition and enforcement of certain arbitral awards. *See id.* at 1263. This ERISA action is not an international arbitration case under the Convention, so Article V does not govern. Nor does this case involve a public policy defense to the recognition and/or enforcement of an arbitration award. We therefore do not view

24-11192                Opinion of the Court                13

**B**

We turn, then, to whether the Arbitration Procedure at issue here constitutes a prospective waiver of statutory rights granted by ERISA. The statutory remedies sought by the plaintiffs include ERISA's plan-wide relief for breaches of fiduciary duty.

As relevant here, 29 U.S.C. § 1109(a) establishes liability for breaches of fiduciary duty, and states as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

(emphasis added).

ERISA expressly provides that plan participants may bring a civil action for relief under § 1109. *See* 29 U.S.C. § 1132(a)(2). Interpreting this statutory framework, the Supreme Court has stated

---

the discussion of *Mitsubishi Motors* in *Lindo* as informing the issue here. Indeed, the six circuits that have applied the effective vindication doctrine have done so at the arbitration enforcement stage. And the Supreme Court has referred to the effective vindication doctrine as a public policy ground on which an arbitration agreement can be "invalidate[d]." *Italian Colors*, 570 U.S. at 235.

that § 1109(a)'s "draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). Thus, ERISA provides for "'plan-related' relief." *Id.*

As noted, six circuits have held that "arbitration provisions preventing individuals from obtaining the plan-wide relief available under [§ 1109(a)] violate the effective vindication doctrine." *Platt v. Sodexo, S.A.*, 148 F.4th 709, 721 (9th Cir. 2025) (citations omitted). *See also Parker*, 114 F.4th at 798; *Smith*, 13 F.4th at 615; *Cedeno v. Sasson*, 100 F.4th 386, 400–06 (2d Cir. 2024); *Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 507–08 (3d Cir. 2023); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1106–07 (10th Cir. 2023). We join them today and affirm the district court's ruling that the Arbitration Procedure here is unenforceable.[3]

We do so because § 1109(a) "provides relief 'singularly to the plan' rather than an individual plaintiff," and § 1132(a)(2) "claims are understood as claims 'brought in a representative capacity on behalf of the plan as a whole.'" *Platt*, 148 F.4th at 721 (first quoting *Mass. Mut.*, 473 U.S. at 142 & n.9, and then citing *Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022)). *See also, e.g.*, *Cedeno*, 100 F.4th at 403 ("[A § 1132(a)(2)] claim is inherently representational.") (citation omitted); *Henry*, 72 F.4th at 506 ("Actions for breach of fiduciary duty under § 1132(a) are brought in a representative

---

[3] No circuit has reached a contrary conclusion.

24-11192                Opinion of the Court                15

capacity on behalf of the plan as a whole.") (alterations adopted and internal quotation marks and citation omitted). And the Supreme Court recently reinforced the substantive nature of the right to bring representative actions. *See Viking River Cruises*, 596 U.S. at 657 ("Non-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of substantive law."). The Arbitration Procedure here plainly disallows claims brought "in a representative capacity," as well as claims that "seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any individual or entity other than the Claimant." D.E. 44-1 at 71.[4]

Contrary to the defendants' assertion, just because a plan participant *may* obtain individualized relief under § 1109(a) does not mean that she somehow waives the right to bring representative-capacity claims that seek relief on behalf of the plan. *See LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008) ("We therefore hold that although [§ 1132(a)(2)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of

---

[4] We "endeavor to be clear about how we are using the term 'representative,'" and reject the defendants' argument that §§ 1109(a) and 1132(a)(2) are merely "claim joinder" mechanisms analogous to the state law statute at issue in *Viking River Cruises*, 596 U.S. at 649, 659. The federal statutory right under ERISA to seek plan-wide relief constitutes "a single claim"—here, the breach of fiduciary duty—arising from a "common transaction"—here, the stock sale. *See id.* at 654.

plan assets in a participant's individual account."). *See also Parker*, 114 F.4th at 796 ("*LaRue* did not overrule *Russell* or abrogate its fundamental precept that [§ 1132(a)(2)] suits are brought in a representative capacity on behalf of the plan as a whole.") (internal quotation marks and citation omitted). Our conclusion is bolstered by the fact that the stock ownership plan here was a defined contribution plan. "Because a defined contribution plan is essentially the sum of its parts, losses attributable to the account of an individual participant are necessarily 'losses to the plan' for purposes of [§ 1109(a)]." *LaRue*, 552 U.S. at 262–63 (Thomas, J., concurring). In sum, §§ 1109(a) and 1132(a)(2) create a statutory cause of action "in which a single agent [i.e., a plan participant] litigates on behalf of a single principal [i.e., the plan,]" *Viking River Cruises*, 596 U.S. at 657, under § 1109(a) for "any losses to the plan[.]"

The defendants' reliance on *Thole v. U.S. Bank, N.A.*, 590 U.S. 538, 544 (2020), is misplaced. First, *Thole* involved a defined benefit plan, and not a defined contribution plan, and the Supreme Court said that distinction was of "decisive importance" to the result. *See id.* at 540. Second, and more fundamentally, the Court in *Thole* did not state (or even hint) that an ERISA § 1132(a)(2) claimant cannot be an agent or proxy of the plan in a representative action. *See generally id. Thole* instead applied familiar Article III principles to conclude that the two plan participants who sued lacked standing because the alleged plan mismanagement did not affect their pension benefits. *See id.* at 540–41. *Thole* did not hold that plan participants could *never* have Article III representational standing, but, rather, ruled that plan participants themselves must suffer a concrete

injury to claim the interests of the plan. *See id.* at 543 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)). We therefore reject the defendants' reading of *Thole.*

We conclude that the Arbitration Procedure's preclusion of ERISA statutory claims brought "in a representative capacity," for relief which benefits anyone other than the individual claimant, prevents the plaintiffs from effectively vindicating §§ 1109(a) and 1132(a)(2) in the arbitral forum. *See* D.E. 44-1 at 71. Although the fourth amendment to the plan purported to allow a claimant to seek certain forms of injunctive relief, it still did not permit representative capacity claims for relief such as disgorgement of profits and restitution to the plan—relief that the plaintiffs sought here. *See Parker*, 114 F.4th at 801 ("That the individual arbitration provision here still allows plan-wide injunctive relief [e.g., seeking an injunction to remove or replace a plan fiduciary] has no bearing on the fact that it eliminates statutorily created plan-wide monetary relief."). The Arbitration Procedure is thus unenforceable as a prospective waiver of a statutory right under ERISA.

This leads to the matter of severability. Whether or not a severability provision in an arbitration agreement "is to be given effect is a question of state law." *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1032 (11th Cir. 2003). And Georgia law looks to the "intent of the parties" in "determin[ing] whether a contract is severable such that the remaining contract provisions will survive even if one or more provisions of the contract are void." *Early v. MiMedx Grp., Inc.*, 768 S.E.2d 823, 827 (Ga. Ct. App. 2015).

Based on the express language of the Arbitration Procedure, the problematic language in the Arbitration Procedure is not severable. *See* D.E. 44-1 at 71–72 ("In the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure (i.e., all of this Section [ ]) shall be rendered null and void in all respects."). We therefore must invalidate the Arbitration Procedure entirely.[5]

## IV

We join our sister circuits in holding that arbitration provisions with near-identical language eliminate the right to pursue substantive plan-wide remedies under ERISA and therefore violate the effective vindication doctrine. *See, e.g., Parker*, 114 F.4th at 801. Accordingly, we affirm the district court's invalidation of the plan's Arbitration Procedure and denial of the defendants' motion to compel arbitration.

**AFFIRMED.**

---

[5] Given our resolution, we need not address the district court's ruling that the individual plaintiffs did not assent to the third and fourth amendments to the plan.