RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TANIKA PARKER and ANDREW FARRIER, individually and on behalf of the DRiV 401(k) Retirement Savings Plan, and all others similarly situated,

*Plaintiffs-Appellees*,

*v.*

TENNECO, INC.; DRiV AUTOMOTIVE, INC.; TENNECO AUTOMOTIVE OPERATING COMPANY, INC.; TENNECO BENEFITS COMMITTEE; FEDERAL-MOGUL CORPORATION; FEDERAL-MOGUL, LLC; FEDERAL-MOGUL POWERTRAIN, LLC; TENNECO BENEFITS & PENSION INVESTMENT COMMITTEE,

*Defendants-Appellants*.

> No. 23-1857

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-10816—George Caram Steeh III, District Judge.

Argued:  May 2, 2024

Decided and Filed:  August 20, 2024

Before:  GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Todd D. Wozniak, HOLLAND & KNIGHT LLP, Atlanta, Georgia, for Appellants. Scott C. Nehrbass, FOULSTON SIEFKIN LLP, Overland Park, Kansas, for Appellees.  Sarah M. Karchunas, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.  **ON BRIEF:**  Todd D. Wozniak, HOLLAND & KNIGHT LLP, Atlanta, Georgia, Lindsey R. Camp, HOLLAND & KNIGHT LLP, West Palm Beach, Florida, for Appellants. Scott C. Nehrbass, Boyd A. Byers, FOULSTON SIEFKIN LLP, Overland Park, Kansas, E. Powell Miller, Sharon S. Almonrode, Mitchell J. Kendrick, THE MILLER LAW FIRM, P.C., Rochester, Michigan, for Appellees.  Sarah M. Karchunas, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.

GIBBONS, J., delivered the opinion of the court in which McKEAGUE and STRANCH, JJ., joined.  McKEAGUE, J. (pp. 21–22) delivered a separate concurring opinion.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Tanika Parker and Andrew Farrier, employees of subsidiaries of Tenneco Inc., each participated in 401(k) plans covered by the Employee Retirement Income Security Act (ERISA).  Both plans (together, the "Plans") had been amended to include mandatory individual arbitration provisions.  These provisions required plan participants to bring suit in arbitration only in an individual capacity, not in a representative, class, or collective capacity, and to seek remedies only for losses to the participant's individual plan account, not for monetary benefits that would accrue to any other participant's account. These provisions explicitly applied to actions under ERISA § 502(a)(2) for relief under ERISA § 409(a).  Parker and Farrier alleged that the fiduciaries of their Plans (the "Fiduciaries") breached their fiduciary duties and sued under § 502(a)(2) on behalf of their Plans for all losses accruing to the Plans, disgorgement of all profits, and other injunctive remedies under § 409(a). The Fiduciaries moved to compel arbitration, arguing that the individual arbitration provisions blocked such a representative suit for plan-wide monetary remedies.  The question for this court is whether the individual arbitration provisions are invalid as a prospective waiver of statutorily guaranteed rights and remedies.  We hold that they are and affirm the judgment of the district court.

I.

This case involves two 401(k) plans—the "DRiV Plan" and the "Tenneco Plan."  Tanika Parker is employed by DRiV Automotive Inc. and has been a participant in the DRiV Plan throughout the relevant period.[1]  Following the DRiV Plan's merger with the Tenneco Plan on July 1, 2022, Parker became a participant of the Tenneco Plan.  Andrew Farrier was employed by Tenneco Automotive Operating Company Inc., a subsidiary of Tenneco Inc., and was a participant of the Tenneco Plan during part of the relevant period.

---

[1]Per the complaint, the relevant period is May 27, 2016, through the present.

Tenneco Inc., the parent company of DRiV and Tenneco Automotive, administered both ERISA-covered 401(k) plans at issue. The Plans are both defined contribution plans.[2] Originally, neither the DRiV Plan nor the Tenneco Plan contained an arbitration provision or representative action waiver. In 2021, the Administrative Committee of Tenneco Inc., which had the power to act as plan administrator and adopt certain amendments, adopted Amendment 2021-1 to the DRiV and Tenneco Plans.

Amendment 2021-1 created a mandatory and binding arbitration procedure for disputes, including any claim for breach of fiduciary duty. The arbitration procedure bars representative, group, or class arbitrations and mandates solely individual arbitration (the "individual arbitration provision"). In relevant part, the provision reads:

> **No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary relief (whether such monetary relief is described as legal damages or equitable relief) to any Employee, Participant, or Beneficiary other than the Claimant.

DE 9-1, DRiV Amend. 2021-1, Page ID 239–40; *see* DE 9-1, Tenneco Amend., Page ID 331. The provision also provides a specific example, relevant here:

> For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant Beneficiary other than the Claimant, and is not binding on the Committee or

---

[2]A defined contribution plan promises the participant the value of her individual account at retirement, which is largely a function of monetary inputs into the account and the investment performance of those contributions. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008). A defined benefit plan, on the other hand, generally promises the participant a fixed amount of retirement income, often depending on the employee's years of service and compensation. *Id.*

> Trustee or with respect to any Employee, Participant or Beneficiary other than the Claimant.

DE 9-1, DRiV Amend. 2021-1, Page ID 240 (emphases in original); *see* DE 9-1 Tenneco Amend., Page ID 331 (materially identical). There is an important caveat to this:

> Notwithstanding the foregoing, nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary.

DE 9-1, DRiV Amend. 2021-1, Page ID 240; DE 9-1, Tenneco Amend., Page ID 331. Finally, the individual arbitration provision is non-severable from the rest of the arbitration agreement.[3]

Parker and Farrier (together, "Parker") sued in federal court "on behalf of [the Plans], themselves, and all others similarly situated" via a putative class action against the Fiduciaries of the Plans[4] for alleged breaches of fiduciary duties owed pursuant to ERISA §§ 404(a)(1) and 405(a). 29 U.S.C. §§ 1104(a)(1), 1105(a). Parker alleged that the Plans' Fiduciaries breached their duties by failing to employ a prudent process for selecting, monitoring, and removing investment options from the Plans' menus. As a result, the Plans offered investment options that were nearly identical, yet higher in cost, to other available investment options. This reduced participants' possible retirement savings. Additionally, the fees charged for managed account services, recordkeeping, and account administration were higher than comparable fees and services available, also resulting in a reduction in savings. Parker alleged that the Plans' Fiduciaries were liable for these purported breaches pursuant to ERISA §§ 409 and 502(a)(2). 29 U.S.C. §§ 1109, 1132(a)(2). In terms of relief for these breaches, Parker requested "all losses caused by their breaches of fiduciary duties," restoration of "any profits resulting from such breaches," and "equitable relief and other appropriate relief." DE 2, Amend. Compl., Page ID 106, 109; *see id.* at 110–11. Parker's prayer for relief included, among other items, the following requests: (1) a determination that Parker could proceed on behalf of the Plans in accordance with

---

[3]On July 1, 2022, the Administrative Committee merged the DRiV Plan into the Tenneco Plan. The amended and restated Tenneco Plan incorporated its prior Amendment 2021-1. The language of the amended and restated Tenneco Plan is substantively identical to the two amendments discussed above.

[4]The Plans' Fiduciaries include Tenneco Inc., DRiV Automotive Inc., Tenneco Automotive Operating Company Inc., Federal-Mogul Powertrain LLC, Federal-Mogul LLC, Federal-Mogul Corporation, the Tenneco Benefits Committee, the Tenneco Benefits & Pension Investment Committee, and John and Jane Does 1 through 30.

ERISA, (2) a declaration that the Fiduciaries had breached their fiduciary duties under ERISA, (3) an order compelling the Fiduciaries "to make good to the Plans all losses to the Plans" resulting from their breaches, (4) actual damages "in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses," (5) an order enjoining the Fiduciaries from any further violations of their ERISA fiduciary duties, responsibilities, and obligations, (6) other equitable relief, including removal of the current Fiduciaries and appointment of an independent fiduciary or fiduciaries to run the Plans, (7) pre-judgment interest, and (8) costs and attorneys' fees under 29 U.S.C. § 1132(g). *Id.* at 113–14.

In response, the Fiduciaries moved to compel individual arbitration, arguing that the individual arbitration provision required arbitration of Parker and Farrier's claims on an individual basis (i.e., only losses to their individual accounts) and barred them from suing on behalf of the Plans or in a representative capacity. The district court denied the Fiduciaries' motion to compel, finding that the individual arbitration provision limited participants' substantive rights under ERISA, as it eliminated their substantive, statutory right to bring suit on behalf of a plan and pursue plan-wide remedies under ERISA §§ 409 and 502(a)(2).

## II.

This court reviews de novo a district court's denial of a motion to compel arbitration.[5] *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 354 (6th Cir. 2022); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 629 (6th Cir. 2022), *cert. denied*, 134 S. Ct. 564 (2023).

## III.

### A.

The ERISA rights and remedies at issue are located in §§ 409(a) and 502(a)(2). Section 502(a)(2) provides that "[a] civil action may be brought . . . by the Secretary [of Labor], or by a

---

[5]District courts in this circuit are split over the standard of review for a motion to compel arbitration: Some apply the Rule 12(b)(1) or Rule 12(b)(6) motion to dismiss standards, while others apply the Rule 56 summary judgment standard. *See Tillman Transp., LLC v. MI Bus. Inc.*, No. 23-10197, 2023 WL 4875872, at *3 n.3 (E.D. Mich. July 31, 2023) (summarizing cases). This issue was not addressed by the parties and need not be decided in this case, since the issue for review is solely one of statutory interpretation.

participant, beneficiary or fiduciary for appropriate relief under [ERISA § 409].”  29 U.S.C. § 1132(a)(2).  Section 409(a), in turn, imposes liability for breaches of fiduciary duties and outlines the remedies available for such breaches.  *See id.* § 1109(a).  The statute establishes that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

*Id.*

Also relevant here is the Federal Arbitration Act (FAA).  Congress enacted the FAA in 1925 in response to a perception that federal courts were unduly hostile toward arbitration.  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018).  The FAA “establishes ‘a liberal federal policy favoring arbitration agreements,’” *id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and makes arbitration “agreements as enforceable as other contracts, but not more so.”  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).  Under the FAA, an agreement to arbitrate “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.”  9 U.S.C. § 2.  Via this savings clause, courts may invalidate an arbitration agreement “based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.”  *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) (internal quotations omitted) (quoting *Kindred Nursing Ctrs. L.P. v. Clark*, 581 U.S. 246, 251 (2017)).

For example, the savings clause would not allow a court to invalidate an arbitration agreement with a class action waiver based on the claim that class action waivers are unconscionable under state law—that argument, premised as it is on “the individualized nature of arbitration procedures,” “interfere[s] with a fundamental attribute of arbitration.”  *Epic Sys.*, 584 U.S. at 508.  By contrast, “traditional, generally applicable contract defense[s]” may apply in “arbitration cases” just as they do elsewhere.  *Id.* at 509.  And one generally applicable defense

concerns contractual provisions that "violate an express provision of positive law," contradict "the purpose of positive law," or "are otherwise inimical to public policy," all of which may be unenforceable. 5 Williston on Contracts § 12:1 (4th ed. 2024).

One manifestation of these principles concerning the operation of the FAA's savings clause is the "effective vindication" doctrine. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, which dealt with claims under the Sherman Act, the Court noted that where arbitration clauses operate "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." 473 U.S. 614, 637 n.19 (1985). "By agreeing to arbitrate a statutory claim, a party does not forgo the *substantive rights* afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 628 (emphasis added); *see also Viking River*, 596 U.S. at 653 ("[T]he FAA does not require courts to enforce contractual waivers of substantive rights and remedies."); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) (acknowledging that "a substantive waiver of federally protected civil rights will not be upheld"); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (stating that "claims arising under a statute designed to further important social policies may be arbitrated . . . so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum") (cleaned up); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." (alterations in original) (quoting *Mitsubishi*, 473 U.S. at 637)). The Court has since noted that if an arbitration agreement "forbid[s] the assertion of certain statutory rights," the effective vindication doctrine would "certainly" apply. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). While *Italian Colors* declined to apply the effective vindication doctrine to a class action waiver in an arbitration provision, it did so because the class action waiver "merely limit[ed] arbitration to the two contracting parties" and did not "eliminate[] those parties' right to pursue their statutory remedy" under § 1 of the Sherman Act. *Id.* at 236, 239. These various proclamations emphasize that the FAA "protect[s] the enforceability of agreements to vindicate substantive rights through an arbitral *forum* using arbitral *procedures*,"

but that "the FAA does not . . . reach agreements to waive *substantive rights and remedies*." *Cedeno v. Sasson*, 100 F.4th 386, 395 (2d Cir. 2024) (emphases in original).

Following this reasoning, four circuits have struck down arbitration provisions that barred "effective vindication" of the statutory rights guaranteed by ERISA. *See id.* at 406–07; *Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 506 (3d Cir.), *cert. denied*, 144 S. Ct. 328 (2023); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1097–1100, 1107 (10th Cir.), *cert. denied*, 144 S. Ct. 280 (2023); *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620–23 (7th Cir. 2021). The question for this court is whether the individual arbitration provision's requirement that claims be brought in an "individual capacity and not in a representative capacity," and its limitation of relief to a claimant's "individual Plan account" and other equitable or remedial relief so long as it "does not include or result in the provision of additional benefits or monetary relief" to any other participant, bar Parker from effectively vindicating her statutory rights under ERISA in the arbitral forum Tenneco constructed. For the following reasons, we conclude that it does so bar Parker, and the individual arbitration provision is unenforceable.

## B.

Congress enacted ERISA, including the two provisions at issue, in 1974. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984). Approximately ten years later, the Supreme Court considered these provisions in the context of a defined benefit plan. In *Massachusetts Mutual Life Insurance Co. v. Russell*, the Court considered the question of whether a participant in a defined benefit plan could utilize §§ 409(a) and 502(a)(2) to recover consequential damages from a delay in the processing of her claim. 473 U.S. 134 (1985). Russell, a beneficiary under an ERISA-governed plan, argued that she was injured by the plan's refusal to pay her benefits during a five-month period based on its improper determination about her disability. *Id.* at 136. While Russell had been paid all benefits under her plan, she asserted consequential damages based on the period of nonpayment to her. *Id.*

The Court denied her individual claim, holding that, based on the text of § 409, recovery for a violation of § 409 "inures to the benefit of the plan as a whole." *Id.* at 140–42. The Court

explained that "the relevant fiduciary relationship [is] characterized at the outset as one 'with respect to a plan.'" *Id.* at 140 (quoting 29 U.S.C. § 1109). Similarly, "the potential personal liability of the fiduciary is 'to make good *to such plan* any losses *to the plan* . . . and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan*. . . .'" *Id.* (emphases and alterations in original) (quoting 29 U.S.C. § 1109(a)). The statutory text of § 409(a) thus refers to "benefitting, in the first instance, solely the plan." *Id.* at 141–42. This contextual reading of the statute, the Court asserted, demonstrates "that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142. The Court added that the legislative history of the provision likewise "emphasize[s] the fiduciary's personal liability for losses *to the plan*." *Id.* at 140 n.8 (emphasis in original). Similarly, § 502(a)(2)'s authorization of the Secretary to bring suit under § 409(a) evinced "Congress'[s] intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." *Id.* at 142 n.9. In sum, "the entire text of § 409" persuaded the Court "that Congress did not intend that section to authorize any relief except for the plan itself." *Id.* at 144. The nature of Russell's claim, consequential damages for nonpayment to her specifically, precluded her use of §§ 409(a) and 502(a)(2). In short, § 502(a)(2) did not provide a cause of action for this individual—as opposed to plan-wide—harm.

The Court's disposal of Russell's individual consequential damages claim crystallized two principles. First, § 502(a)(2) contemplates the ability of participants to sue in a representative capacity on behalf of a plan. *See id.* at 142 n.9 (explaining that Congress intended § 502(a)(2) "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole"). Second, based on the plain language of the statutory text, relief under § 409(a) flows to the plan. *See* 29 U.S.C. § 1109(a) (a fiduciary who breaches his duties "shall be personally liable to *make good to such plan any losses to the plan* resulting from each such breach, and to *restore to such plan any profits* of such fiduciary" (emphases added)).

Contrary to the Fiduciaries' assertion, *LaRue v. DeWolff, Boberg & Associates, Inc.* reinforces, rather than undermines, these conclusions. 552 U.S. 248 (2008). In *LaRue*, the Court

clarified *Russell* in the context of defined contribution plans. LaRue, a defined contribution plan participant, alleged that he had directed his employer, DeWolff, to make certain changes to his investments in his individual account, and that DeWolff had failed to do so, resulting in an alleged depletion to LaRue's individual account. *Id.* at 251. The court of appeals, citing the Court's decision in *Russell*, rejected LaRue's action under § 502(a)(2). *Id.* at 251–52. The Court reversed, holding that LaRue could bring an action based on these losses.

*LaRue* distinguished the result in *Russell* on the basis that *Russell* dealt with a defined benefit plan, while *LaRue* dealt with a defined contribution plan. *Id.* at 255. When ERISA was enacted and *Russell* decided, defined benefit plans were the norm. *Id*. *LaRue* explained that a sea change in retirement offerings had occurred, and now defined contribution plans were the norm. *Id.* This was critical because defined benefit plans paid a fixed amount based on the employee's salary, and so "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement" except to the extent that it affects the entire plan. *Id.* On the other hand, for defined contribution plans, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. "Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." *Id.* at 256. "*Russell*'s emphasis on protecting the 'entire plan'" reflected the fixed benefit nature of the plan at issue. *Id.* at 254 (quoting *Russell*, 473 U.S. at 142). "Now," with defined contribution plans, "the 'victim' could be an individual account, even if the plan as a whole remain[ed] secure." *Hawkins*, 32 F.4th at 631. With this distinction clarified, *LaRue* held that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue*, 552 U.S. at 256; *see also id.* at 261 (Thomas, J., concurring) ("The plain text of § 409(a), which uses the term 'plan' five times, leaves no doubt that § 502(a)(2) authorizes recovery only for the plan.").

While *LaRue* acknowledged the possibility of a participant bringing a claim under § 502(a)(2) regarding her individual plan account, *LaRue* still affirmed the principle in *Russell*

that § 502(a)(2) provides a remedy for "plan injuries," not individual ones.  *See id.* at 256.  While *LaRue* recognized that fiduciary misconduct "need not threaten the solvency of the entire plan" to create a claim, liability can (and will) still accrue from fiduciary misconduct that threatens the entire plan.  *See id.* at 255–56.  In other words, *LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009).  Following *LaRue*, our sister circuits have continued to allow participants in defined contribution plans to sue on the plan's behalf for all losses resulting from a fiduciary breach and have not interpreted *LaRue* as a bar to plan-wide recovery.  *See Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1093–94 (9th Cir. 2018); *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 65–66 (2d Cir. 2013); *see also Spano v. The Boeing Co.*, 633 F.3d 574, 579–81, 586 (7th Cir. 2011).

Moreover, our circuit has already considered the question of whether § 502(a)(2) claims belong to individuals or to the plan as a whole in light of the above Supreme Court case law. *Hawkins*, 32 F.4th at 629, 631.  In *Hawkins*, the plaintiffs brought a putative class action under § 502(a)(2) based on allegations that their former employer, Cintas, breached fiduciary duties owed to their retirement plan.  *Id.* at 627.  Specifically, the plaintiffs argued Cintas had offered participants the ability to invest only in more expensive actively managed funds, as opposed to less expensive passively managed funds, and that Cintas charged the plan excessive recordkeeping fees—like the claims at issue here.  *Id.* at 628.  But unlike this case, the individual would-be plaintiffs had signed employment agreements that contained arbitration provisions (as opposed to here, where the Plan documents contained the arbitration procedure).  *Id.*  Cintas moved to enforce the arbitration provisions, which included a class action and representative action waiver.  *Id.* at 627, 629.  The district court concluded that because the plaintiffs had signed arbitration agreements in their employment contracts, there was no evidence that the plan had consented to arbitration, and so the matter was not subject to arbitration.  *Id.* at 629.

The key question for *Hawkins* was whether § 502(a)(2) claims belonged to the plan or to individual plaintiffs.  *Id.* at 627.  That governed whether the arbitration provisions in the

employment agreements could operate: if § 502(a)(2) claims belonged to the individuals, the arbitration provisions in the employment agreements would apply, whereas if § 502(a)(2) claims belonged to the plan, the arbitration provisions in the employment agreements would not apply absent plan consent. *See id.* After considering *Russell*, *LaRue*, and other out-of-circuit precedent, *Hawkins* concluded that "[a]lthough § 502(a)(2) claims are brought by individual plaintiffs, it is the plan that takes legal claim to the recovery, suggesting that the claim really 'belongs' to the Plan." *Id.* at 631–33.

*Hawkins* understood that, although *LaRue* reevaluated *Russell* in the context of defined contribution plans, *LaRue* did not overrule *Russell* or abrogate its fundamental precept that "[s]ection 502(a)(2) suits are 'brought in a representative capacity on behalf of the plan as a whole.'" *Id.* at 630 (quoting *Russell*, 473 U.S. at 142 n.9). *Hawkins* interpreted *LaRue* to mean that, "while any claims properly brought under § 502(a)(2) must be for injuries to the plan itself, § 502(a)(2) authorizes suits on behalf of a defined-contribution plan even if the harm is inherently individualized." *Id.* at 631. In other words, *LaRue* allows an individual plaintiff to bring a § 502(a)(2) representative suit for losses to her individual plan account, even though the injury is to the plan.

*Hawkins* acknowledged that *LaRue* did not explicitly hold that a § 502(a)(2) claim belongs to either the plaintiff or the plan itself. *Id.* But *Hawkins* concluded, based on persuasive Ninth and Third Circuit precedent as well as the history of § 502(a)(2) suits, that § 502(a)(2) claims belong to the plan. *Id.* at 632–33. Specifically, § 502(a)(2) suits are derivative actions finding their origin in common law trust principles. *LaRue*, 552 U.S. at 253 n.4; *Russell*, 473 U.S. at 152–53 (Brennan, J., concurring). Section 502(a)(2) "merely codifies for ERISA participants and beneficiaries a classic trust-law process for recovering trust losses through a suit on behalf of the trust." *Hawkins*, 32 F.4th at 632 (quoting *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 296 (3d Cir. 2007)). As a breach by a common law trustee allows any beneficiary whose beneficial interests were affected to sue the trustee to make good on the loss, so too may a participant sue a fiduciary under § 502(a)(2) to "make good *to [the] plan any losses* to the plan resulting from" his breach and "to *restore to [the] plan* any profits." 29 U.S.C. § 1109(a) (emphasis added); *Graden*, 496 F.3d at 295–96.

*Hawkins* also noted that interpreting the plaintiffs' claim as belonging to them as individuals, as opposed to belonging to the plan, would conflict with *LaRue*. *Hawkins*, 32 F.4th at 634. As discussed above, *LaRue* explicitly held that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." *Id.* (quoting *LaRue*, 552 U.S. at 256). And just because plaintiffs would benefit from a remedy accruing to the plan as a whole did not render their claims individualized. *Id.* *Hawkins* interpreted the plaintiffs' complaint as seeking relief for the plan as a whole, as opposed to actions that affected their accounts individually. *Id.* The allegation that Cintas offered higher-cost investment options and charged excessive recordkeeping fees were not "actions that affected them individually, as in *LaRue*," but rather reflected harm (and recovery) to the plan. *Id.* "If, for instance, the named Plaintiffs were to be swapped out with two other employees, nothing material in the complaint would need to be changed." *Id.* at 635. Given this, *Hawkins* held that the plaintiffs were "seeking Plan-wide relief through a statutory mechanism that is designed for representative actions on behalf of the Plan." *Id.*

The operative difference between *Hawkins* and our case is the fact that the Plans here "consented" to arbitration by adopting arbitration provisions via Amendment 2021-1, whereas in *Hawkins* the arbitration provisions were in the employment agreements and thus not consented to by the plan itself. *See id.* at 637. Even so, *Hawkins*'s discussion of *Russell* and *LaRue*, as well as its ultimate conclusion that § 502(a)(2) claims belong to the plan, inform this court's understanding of the rights conferred by ERISA.

Here, Parker brought a putative class action, alleging that the Fiduciaries breached their fiduciary duties in two main ways: First, by failing to employ a prudent process for selecting, monitoring, and removing investment options from the Plans' menus, which resulted in participants choosing higher-cost investment options when nearly identical lower-cost options existed on the market, thus reducing their retirement savings; and second, by charging excessive account services, recordkeeping, and administration fees that also exceeded near-identical options in the market and thus resulted in a reduction in savings. While the complaint alleges that these breaches harmed Parker and Farrier's individual accounts, the complaint also alleges harm to the Plans as a whole. Further, Parker's complaint explicitly requests plan-wide, as

opposed to individualized, remedies under §§ 409(a) and 502(a)(2).  Parker requests damages "in the amount of any losses the Plans suffered" due to the breaches of fiduciary duties, restoration "to the Plans all profits" resulting from such breaches, and a judicial determination that Parker and Farrier may proceed on behalf of the Plans in accordance with ERISA, among other requests.  DE 2, Amend. Compl., Page ID 106, 109, 113–14.

The harms that Parker's complaint alleges are akin to the plan-wide harms in *Hawkins*, not the individualized harms in *LaRue*.  Here, as in *Hawkins*, Parker alleges that the Fiduciaries offered participants the ability to invest only in more expensive funds, as opposed to other available less expensive funds, thus resulting in a reduction in retirement savings.  *See Hawkins*, 32 F.4th at 628, 634.  Like *Hawkins*, the names of Parker and Farrier are immaterial—if these two named individuals were swapped with two other Plan participants, "nothing material in the complaint would need to be changed," thus evidencing plan-wide, as opposed to individual, harms.  *Id.* at 635.  And even putting aside the Plans' menu options, excessive recordkeeping and administrative fees harmed the Plans as a whole.  *See id.* at 634 (considering excessive recordkeeping fees as a plan-wide harm).  Moreover, the harms Parker alleges bear no resemblance to the individual claim alleged in *LaRue*, where LaRue directed his employer to make certain changes to his individual account, and the employer failed to do so, resulting in losses specific to his individual account.  *LaRue*, 552 U.S. at 251.  Parker's complaint invokes not just individual injuries to a particular account, but "plan injuries"—an overall reduction in the Plans' savings via the provision of higher-cost investment options and excessive fees.  *See id.* at 256.

Additionally, the monetary remedies that Parker requests flow to the Plans, not individual participants.  Parker requests restitution of all losses to the Plans resulting from the fiduciary breaches, a remedy expressly authorized by the plain language of § 409(a) and inuring to the plan.  *See* 29 U.S.C. § 1109(a) (mandating that a fiduciary must "make good to such plan *any losses to the plan* resulting from each such breach" (emphasis added)).  Parker further requests disgorgement of all profits, also a remedy created by § 409(a)'s text and flowing to the plan.  *See id.* (mandating that fiduciaries shall "restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary").  Finally, Parker and Farrier

seek a determination that they may proceed on behalf of the Plans in accordance with ERISA. As discussed above, § 502(a)(2) contemplates suits in a representative capacity on behalf of a plan as a whole. *Russell*, 473 U.S. at 142 n.9; *see LaRue*, 552 U.S. at 256.

In sum, Parker seeks "Plan-wide relief through a statutory mechanism that is designed for representative actions on behalf of the Plan[s]." *Hawkins*, 32 F.4th at 635. The individual arbitration provision, however, restricts Parker to actions brought in an "individual capacity and not in a representative capacity," and restricts the monetary relief Parker can obtain to losses to her individual Plan account and prorated profits. The individual arbitration provision thus eliminates the ability to proceed in a representative capacity on behalf of the Plans and obtain relief for losses to the Plans, which, as demonstrated by *Russell*, *LaRue*, and *Hawkins*, are substantive statutory remedies provided by ERISA. The provision is therefore unenforceable as a prospective waiver of these statutory rights.

## C.

While not binding on our court, the decisions of four other circuits on the same issue reinforce this conclusion. The first in this line of cases was *Smith v. Board of Directors of Triad Manufacturing, Inc.* There, the Seventh Circuit considered an arbitration provision in a defined contribution plan document that required individual arbitration of ERISA claims and barred claimants from "seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." *Smith*, 13 F.4th at 616. The plaintiffs brought a class action complaint, alleging breaches of fiduciary duty based on an improper inside transaction that depleted the plan's holdings. *Id.* at 616–17. The requested relief included removal of the current plan trustee, appointment of a new independent fiduciary, and "'other and further relief' under § 1132(a)(2)." *Id.* at 617. *Smith* held the arbitration provision unenforceable under the effective vindication doctrine. *Id.* at 621. Although "rare," application of the effective vindication doctrine was proper because § 409(a) provided relief for fiduciary breaches including "such other equitable or remedial relief as the court may deem appropriate," including removal of a fiduciary. *Id.* (quoting 29 U.S.C. § 1109(a)). The plan's class action waiver precluded participants from pursuing "any remedy" which would provide "additional benefits or monetary

or other relief" to other participants. *Id.* at 616, 621. Because removal of a fiduciary—a statutory remedy guaranteed by § 409—would provide relief to other participants in addition to the individual claimant, the plain text of § 409 and the arbitration provision conflicted. *Id.* at 621–22. As the arbitration provision acted as a "prospective waiver of a party's right to pursue statutory remedies," the effective vindication doctrine invalidated the class action waiver. *Id.* at 621 (quoting *Mitsubishi*, 473 U.S. at 637 n.19).

The Third Circuit similarly applied the effective vindication doctrine in *Henry ex rel. BSC Ventures Holdings, Inc. Employee Stock Ownership Plan v. Wilmington Trust NA*. *Henry* dealt with a near-identical class action waiver to that in *Smith*, and similarly concluded that its prohibition on equitable relief to plan participants other than the claimant conflicted with § 409(a)'s provision specifying removal of the fiduciary as a form of relief. *Henry*, 72 F.4th at 507 (citing *Smith*, 13 F.4th at 621–22). But *Henry* went a step farther, finding another conflict between the statutory relief that plaintiffs requested and the class action waiver. Henry sought, as part of his requested relief, disgorgement. *Id.* at 503. Section 409(a) authorizes a participant to seek restitution of plan losses from a fiduciary, thus permitting "recovery of <u>all</u> plan losses caused by a fiduciary breach." *Id.* at 507 (emphasis in original) (quoting *LaRue*, 552 U.S. at 261 (Thomas, J., concurring)). This created a conflict with the class action waiver, as "[r]estitution of 'all plan losses' would necessarily result in monetary relief to non-party plan participants." *Id.* (explaining that restitution to the plan is both "expressly authorized by statute and necessarily plan-wide"). Because the class action waiver thus operated as a "prohibited prospective waiver" of the statutorily created remedy, the Third Circuit refused to enforce it. *Id.*

Of the four cases from our sister circuits, the class action waiver in *Harrison v. Envision Management Holding, Inc. Board of Directors* is the most like the individual arbitration provision here. Harrison, a participant in an ERISA-protected defined contribution plan, brought a purported class action suit against the plan fiduciaries, alleging a breach of fiduciary duty based on an insider transaction that significantly depleted the value of the plan and thus participants' retirement savings. *See Harrison*, 59 F.4th at 1095. The plan fiduciaries moved to compel arbitration, arguing that the plan's class action waiver compelled Harrison to arbitrate his claims on an individual basis. *Id.* at 1095–96. The class action waiver mandated that claims "be

brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." *Id.* at 1105. Further, claimants could "not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to anyone other than the claimant. *Id.* Like the individual arbitration provision here, the class action waiver in *Harrison* specified that, with respect to ERISA §§ 409 and 502(a)(2), the claimant's remedy was "limited to (i) the alleged losses to the Claimant's individual Account . . . (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets . . . and/or (iii) such other remedial or equitable relief" so long as such relief did not "result in the provision of additional benefits or monetary relief" to any other participant or third party. *Id.*

*Harrison* suggested that the effective vindication doctrine might apply to "the prohibition on a claimant proceeding in a representative capacity," where the claimant alleges "plan-wide harm and not just harm to the claimant's own account[,] and the claimant seeks relief under [§ 502(a)(2)]." *Id.* at 1106. Moreover, Harrison sought to impose liability on the fiduciaries for losses suffered by the plan generally, an order removing the trustee, an order appointing a new independent fiduciary and directing defendants to pay the cost of that fiduciary, and an order directing restoration of all losses resulting from the fiduciary breaches and disgorgement of all profits. *Id.* at 1106–07. Each of these forms of relief would have the purpose or effect of providing additional benefits or monetary relief to other plan participants, and so their effective vindication conflicted with the class action waiver. *Id.* at 1107. Further, Harrison's complaint alleged harms to the plan as a whole (an insider transaction that reduced the value of plan assets) rather than harms specific to his individual account. *Id.* at 1109. Sections 409 and 502(a)(2), the court in *Harrison* declared, "allow claimants to obtain certain forms of plan-wide relief." *Id.* at 1111. In sum, the arbitration provision was "not problematic because it require[d] Harrison to arbitrate his claims, but rather because it purport[ed] to foreclose a number of remedies that were specifically authorized by Congress." *Id.* at 1107. *Harrison*, above all, made clear that the key is not the arbitration forum itself, but rather the relief allowed in the arbitration forum.

Finally, and most recently, in *Cedeno v. Sasson*, the Second Circuit became the fourth circuit to apply the effective vindication doctrine when faced with potential arbitration of ERISA claims. *Cedeno* held that an individualized arbitration provision in the plan's governing document, which barred representative suits and limited relief to the claimant's account, was unenforceable because it prevented claimants from pursuing substantive statutory remedies provided by ERISA. Like our decision here, *Cedeno* understood *LaRue* as broadening *Russell*, rather than limiting it. *See Cedeno*, 100 F.4th at 399 ("At most, *LaRue* recognized that Section 502(a)(2) provides a remedy for injuries to the plan that are felt only at an individual account level; the Court did not suggest that Section 502(a)(2) allows individualized relief for injuries that *are* felt at *the plan* level." (emphases in original)). And *Cedeno* also viewed *LaRue* as reinforcing, rather than undermining, the conclusion in *Russell* that § 502(a)(2) "provides no remedy for 'individual injuries distinct from plan injuries.'" *Id.* (quoting *LaRue*, 552 U.S. at 256).

As in *Smith* (improper inside transaction that depleted plan holdings), *Henry* (plan incurred debt to purchase inflated stock that depleted plan assets), *Harrison* (improper inside transaction that depleted plan holdings), and *Cedeno* (plan overpaid for private company shares), Parker's complaint alleges plan-wide harms. *See Smith*, 13 F.4th at 616–17; *Henry*, 72 F.4th at 503; *Harrison*, 59 F.4th at 1095; *Cedeno*, 100 F.4th at 391, 405. And like the plaintiffs in *Henry* and *Harrison*, Parker requests restitution of all losses to the Plans resulting from the fiduciary breaches, a plan-wide remedy created by § 409(a). *Henry*, 72 F.4th at 507; *Harrison*, 59 F.4th at 1106–07. Further, Parker requests disgorgement of all profits to be allocated to each account in proportion to that account's losses, a remedy that *Harrison* determined constituted relief provided by § 409(a). *Harrison*, 59 F.4th at 1106–07. Finally, Parker and Farrier seek to proceed in a representative capacity, the prohibition of which *Harrison* found "problematic, at least where, as here, the claimant alleges that the named defendants violated fiduciary duties that resulted in plan-wide harm and not just harm to the claimant's own account and the claimant seeks relief under [§ 502(a)(2)]." *Id.* at 1106.

The Fiduciaries argue that we should disregard *Henry* and *Harrison*, because the class action waivers in those cases are distinguishable from the waiver here. Specifically, the individual arbitration provision here allows claimants to seek "injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary," whereas the waivers in *Henry* and *Harrison* precluded all injunctive relief. DE 9-1, DRiV Amend. 2021-1, Page ID 240; DE 9-1, Tenneco Amend., Page ID 331. But both *Henry* and *Harrison* contain broader holdings than just the injunctive relief point—both held, independently of the injunctive relief point, that prohibitions on plan-wide monetary relief were themselves unenforceable under the effective vindication doctrine. *Henry*, 72 F.4th at 507; *Harrison*, 59 F.4th at 1106–07. That the individual arbitration provision here still allows plan-wide injunctive relief has no bearing on the fact that it eliminates statutorily created plan-wide monetary relief. And, based on the assumption that § 502(a)(2) are plan claims, not individual plaintiff claims, *Harrison* suggested that a prohibition on proceeding in a representative capacity might be "problematic." *Harrison*, 59 F.4th at 1106.

## IV.

To summarize, sections 409(a) and 502(a)(2), as reflected by their plain language and interpreted by *Russell* and *LaRue*, allow participants to sue on behalf of a plan for remedies that accrue to the plan. *See Russell*, 473 U.S. at 140–42; *LaRue*, 552 U.S. at 256. *Hawkins* similarly held that § 502(a)(2) claims belong to the plan, and the plan takes the legal claim to recovery under § 409. 32 F.4th at 632–33. Here, Parker alleges plan-wide injuries. Parker and Farrier seek to proceed in a representative capacity on behalf of the Plans, which the individual arbitration provision prohibits. And Parker requests at least two remedies under § 409(a) that the individual arbitration provision prohibits: "all losses" to the Plans caused by the breaches of fiduciary duties, and restoration to the Plans of "any profits resulting from such breaches." DE 2, Amend. Compl., Page ID 106, 109, 110–11; *see also* 29 U.S.C. § 1109. The individual arbitration provision therefore functions as a prospective waiver of Parker's substantive statutory remedies and is unenforceable. Because the individual arbitration provision is non-severable from the arbitration procedure, the arbitration procedure is unenforceable.

It is just as important to note what we do not hold. Nothing in this opinion should be construed as implying that §§ 409(a) and 502(a)(2) are incompatible with the arbitral forum. The problem here lies with this individual arbitration provision, which is non-severable, limiting statutory remedies that bar effective vindication of statutory rights. *See Harrison*, 59 F.4th at 1106–07, 1109.

For the foregoing reasons, the district court's judgment is affirmed.

———————————

**CONCURRENCE**

———————————

McKEAGUE, Circuit Judge, concurring.  Writing on a blank slate, this case would be difficult.  It raises hard questions of statutory interpretation, requires us to consider the interplay between ERISA and the FAA, and tasks us with applying a judge-made doctrine.

Fortunately for us, much ink has been spilled on these topics.  This Circuit has accepted and applied the effective vindication doctrine, although in a different context.  *See Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) (en banc) (Title VII); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 491–92 (6th Cir. 2004) (per curiam) (same).  Binding precedent has also made clear, as the majority opinion explains, that ERISA claims under § 502(a)(2) are "representative actions" that "belong to the plan," which takes "legal claim to the recovery." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 627, 633, 635 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 564 (2023).  Given the arbitration provision here—which generally bars claims brought in a representative capacity and plan-wide remedies—those rulings are enough for us to affirm.  Even so, I write separately to note two things.

*First*, judge-made doctrines are being scaled back.  *See, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 490–92 (2022) (discussing the court's approach to "judicially created causes of action" under *Bivens*); *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (overruling *Chevron*, a "judicially implied . . . delegation of interpretive authority" (quoting *id.* at 2287 (Gorsuch, J., concurring))).  And the effective vindication doctrine may be next.  Though the doctrine has been mentioned in dicta—which we generally must follow—it has never been used by the Supreme Court to bar an arbitration provision under ERISA.  *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (explaining that the Court has "declined to apply [the doctrine] to invalidate the arbitration agreement[s] at issue").  The doctrine also conflicts with two principles.  One:  we have a national policy favoring arbitration.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Two:  arbitration agreements should be enforced unless the contract was not properly made.  9 U.S.C. § 2; *see also Italian Colors*, 570 U.S. at 239

(Thomas, J., concurring). If, based on any of these (or other) concerns, the effective vindication doctrine ceases to exist at some point in the future, so too does the force of the majority opinion.

But our job as a lower court is not to decide cases based on the direction that we think the law may be heading; we apply the law as it exists now. And binding precedent requires us to apply the effective vindication doctrine.

*Second*, I worry that we address an issue that could have been saved for another day. Independent of their argument under the effective vindication doctrine, Parker and Farrier contend that the arbitration provision is unenforceable because it was added through an improper amendment. And they might be right. The administrative committee—which was responsible for amending the plans to include arbitration provisions—only had the authority to:

> make amendments to the Plans that are technical in nature or necessary in the ordinary course of the administration of the Plans and which are reasonably expected to result in an increase in cost or expense to the Company and/or its affiliates of less than $200,000 per year per amendment.

Admin. Comm. Charter, R.16-1 at PageID 404. The addition of an arbitration provision appears (at least based on the current record) neither "technical in nature" nor "necessary in the ordinary course" of plan administration. So perhaps the most prudent course would have been to remand for the district court to determine the validity of the amendment adding the arbitration provision. That question, in my view, is less susceptible to facing a change in the governing law.

Nevertheless, because Sixth Circuit precedent supports the district court's ruling, I concur.